# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **MONUMENT HEALTH, LLC,** | |
| Plaintiff, | Civil Action Filing No: |
| v. | |
| **POLARIS SPINE & NEUROSURGERY CENTER, P.C.,** | Jury Trial Demanded |
| Defendant. | |

## PLAINTIFF'S COMPLAINT

Plaintiff Monument Heath, LLC ("Monument") files this Verified Complaint against Polaris Spine & Neurosurgery Center, P.C. ("Polaris") and states as follows:

## PRELIMINARY STATEMENT

1.     This is a commercial dispute arising from Polaris' breach of a Consulting Agreement (the "Agreement") between Polaris and Monument.

2.     The nature of the dispute is simple: Polaris agreed to pay Monument for various medical practice management services, Monument performed the agreed-upon services, and Polaris has refused to pay for the services performed.

3.     To date, Polaris owes Monument a minimum of $98,500 in unpaid invoices.

4.     Monument made multiple inquiries to Polaris regarding the invoices, all of which were completely ignored by Polaris.

5.     In accordance with the arbitration provision set forth in the parties' Agreement, Monument promptly initiated an arbitration before the AAA, paid its portion of all required fees associated with the arbitration, and fully participated in the arbitration.

6.     On January 20, 2023—5 days before the parties were set for final hearing and after months of repeated delay tactics on Polaris' part—the arbitrator terminated the matter due to Polaris' failure to meet its agreed-upon obligation to pay its share of the arbitration fees.

7.     To date, Monument has incurred over $37,000 in attorneys' fees and arbitration expenses in connection with this dispute.

8.     For these reasons, Monument seeks:

(1)     An award in favor of Monument and against Polaris for monetary damages in an amount to be determined;

(2)     An order awarding Monument its attorneys' fees and all costs and expenses incurred in connection with this dispute; and

(3)     All other and further relief that the Court deems just and proper.

## PARTIES, JURISDICTION, AND VENUE

9.    Polaris is a neurosurgery medical practice organized under the laws of the State of Georgia. Its principal place of business is in Atlanta, Georgia, and it is a citizen of Georgia.

10.    Monument focuses on providing practice-related solutions to specialist medical groups and is organized under the laws of the State of Alabama. Its principal place of business is in Birmingham, Alabama, and it is a citizen of Alabama.

11.    This is a dispute between citizens of different states.

12.    The acts and events giving rise to the claims set forth herein took place fully, or in substantial part, in the Atlanta area.

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Monument and Polaris, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

14.    Venue is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions on which the claim is based occurred in this district and Polaris is a resident of the State of Georgia.

15.    All conditions precedent to the filing of this action have occurred.

## GENERAL ALLEGATIONS

### I.   The Consulting Agreement

16.   On October 26, 2021, Monument and Polaris entered into an agreement whereby Monument agreed to work with Polaris to organize and implement various practice management solutions, including but not limited to general administrative management, payer credentialing and managed care contracting, and Polaris' revenue cycle management process. *See* Agr. Section II. A copy of the Agreement is attached as **Exhibit 1**.

17.   The Agreement provided that Monument's services would take place between November 1, 2021 and April 30, 2022. *See* Agr. Section II.

18.   Polaris agreed to pay Monument $33,000 per month and also agreed to pay for certain expenses Monument incurred. *See* Agr. Sections III and VIII.

### II.   Polaris' Refusal To Pay Overdue Invoices

19.   Polaris has refused to pay Monument for services Monument provided in January, February, March, and April 2022.

20.   Monument invoiced Polaris as follows:

January 2022 (Invoice No. 1058):        $21,000

February 2022 (Invoice No. 1066):        $28,000

March and April 2022 (Invoice No. 1067):   $49,500

4

Copies of the invoices are enclosed as **Exhibit 2**.

21.     Polaris has refused to pay ***any amount*** toward **any** of these invoices and has simply ignored multiple inquiries from Monument and Monument's counsel.

## III.  Polaris' Refusal To Comply With The Parties' Arbitration Agreement

22.     The parties' Agreement contains a mandatory arbitration provision, which is found at Section IX of the Agreement:

> IX. Disputes. If any dispute arises under this Agreement, the Consultant and the Client shall negotiate in good faith to settle such dispute. If the parties cannot resolve such disputes themselves, then either party may submit the dispute to mediation by a mediator approved by both parties. If the parties cannot agree with any mediator or if either party does not wish to abide by any decision of the mediator, they shall submit the dispute to arbitration by any mutually acceptable arbitrator, or the American Arbitration Association (AAA). The costs of the arbitration proceeding shall be borne according to the decision of the arbitrator, who may apportion costs equally or in accordance with any finding of fault or lack of good faith of either
>
> party. If either party does not wish to abide by any decision of the arbitrator, they shall submit the dispute to litigation. The jurisdiction for any dispute shall be administered in Fulton County, State of Georgia.

23.     The arbitration provision applies to any dispute arising under the Agreement.

24.     Monument's claims were required to be arbitrated, because they arise under the Agreement.

25.     However, prior to initiating an arbitration against Polaris, Monument first tried to negotiate in good faith to settle the parties' dispute.

26.     Specifically, Monument made inquiries to Polaris' principal(s) regarding the overdue invoices. When Monument received no response to such inquiries, Monument retained legal counsel, who made formal inquiries and demands to Polaris regarding the overdue invoices.

27.     Polaris provided no response whatsoever to any of Monument's direct inquiries or the inquiries made through Monument's legal counsel.

28.     Accordingly, given that Polaris refused to engage in any communications with Monument regarding the unpaid invoices, Monument elected not to pursue the elective mediation route referenced in the arbitration provision (noting that the parties "*may* submit the dispute to mediation"). And, rather, Monument proceeded to comply with the arbitration provision's requirement that the parties "shall" submit the dispute to arbitration.

29.     Monument initiated the arbitration against Polaris by filing its Demand for Arbitration on June 17, 2022.

30.     After months of continued delay tactics and refusal to substantively participate in the arbitration or share in the costs of the arbitration, on January 20, 2023, the arbitrator entered an order terminating the matter due to Polaris' failure to pay. *See* **Exhibit 3**.

31.     The order was entered a mere 5 days before the matter was set for final hearing.

32.     Given that Monument fully participated in the arbitration proceeding for 7 months and up to the virtual eve of the final hearing, Monument incurred attorneys' fees and costs of over $37,000—all of which were essentially wasted given that Polaris refused to participate, despite having agreed to do so in the parties' Agreement.

33.     Having fully complied with its obligation to first attempt to resolve this dispute via arbitration, Monument is left with no choice but to seek relief from the Court.

## III.   Polaris' Refusal To Honor the Parties' Settlement Agreement

34.     In an attempt to resolve the matter short of proceeding with the final arbitration hearing that was set for January 24 and 25, 2023, the parties reached a settlement in principle on December 9, 2022.

35.     The parties formalized the terms of the settlement in a written agreement, and Monument executed the settlement agreement on December 26, 2022. There were no material terms outstanding that needed to be agreed upon.

36.     Polaris then refused to sign the settlement agreement and, on December 30, 2022, Polaris' counsel informed the AAA and the undersigned that

Polaris could not make any settlement payment to Monument and that he would be withdrawing as counsel for Polaris.

37.     Once again, Monument incurred fees negotiating a settlement and preparing a settlement agreement, all to be wasted once Polaris reneged on the agreement at the last minute. On information and belief, as with its prior agreements to pay for services rendered, Polaris never intended to honor its agreement to settle this dispute and engaged in the settlement process as only another tactic for delaying the proceedings.

## COUNT I: BREACH OF CONTRACT

38.     Monument realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

39.     The Agreement requires Polaris to pay $33,000 per month for services Monument provided to Polaris.

40.     Polaris has failed to pay Monument for the services Monument provided and, therefore, has breached the Agreement.

41.     Monument is entitled to all damages caused by Polaris' breach of the Agreement, including but not limited to the $98,500 in unpaid invoices, plus interest.

## COUNT II: O.C.G.A. § 13-6-11 CLAIM
## FOR ATTORNEYS' FEES

42.    Monument realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

43.    Polaris has been stubbornly litigious, has acted in bad faith, and has caused Monument unnecessary trouble and expense.

44.    There is not and has never been any credible basis for Polaris to stiff Monument on the agreed-upon amounts that Polaris owes for unpaid invoices.

45.    Polaris refused to respond to Monument's and its legal counsel's inquiries regarding the unpaid invoices and refused to substantively participate in the arbitration or pay a portion of the required fees.

46.    Throughout the arbitration proceedings, Polaris made repeated requests for additional time for virtually every deadline (including multiple extensions for filing a counterclaim and for responding to what were very limited discovery requests) and continually represented to the arbitrator and AAA that payment of AAA and arbitrator fees would be forthcoming.

47.    Ultimately, despite its own repeated requests for extension—which greatly delayed the proceedings and may have impaired Monument's ability to collect on any judgment obtained—Polaris never advanced a viable counterclaim,

never produced any documents until the week before the final hearing, and never paid its share of the fees assessed by the AAA.

48.    Polaris also led Monument to believe that it was engaging in settlement discussions in good faith, and reached a settlement, yet then refused to sign the agreement.

49.    Polaris' stubborn litigiousness and bad faith through repeated tactics to delay and obstruct any potential process for potential resolution of this dispute have caused Monument unnecessary trouble and expense.

50.    Accordingly, Monument is entitled to its attorneys' fees, costs, and expenses incurred in connection with this dispute.

**WHEREFORE**, Monument respectfully demands a jury trial and requests that the Court enter a judgment against Polaris, granting the following relief:

(1)    Enter an award in favor of Monument and against Polaris for monetary damages in an amount to be determined;

(2)     Enter an order awarding Monument its attorneys' fees and all costs and expenses incurred in connection with this dispute; and

(3)     Award all other and further relief that the Court deems just and proper.

Respectfully submitted this 8th day of February, 2022.

BALLARD SPAHR LLP

*/s/ Keisha O. Coleman*
Keisha O. Coleman (Bar # 844720)
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
T: (678) 420-9300
F: (678) 420-9301
colemank@ballardspahr.com

*Attorney for Plaintiff Monument
Health, LLC*

11

## **VERIFICATION**

Before me, the undersigned Notary Public in and for said County and State, on this day personally appeared Basheer Alismail, a duly authorized agent of Monument Health, LLC, who after being duly sworn, did on his oath depose and state that under penalty of perjury, the statements contained in the above and foregoing Complaint are within his personal knowledge and are true and correct.

Executed this 8ᵗʰ day of February, 2023.

_____
Basheer Alismail

_____

State of __Alabama__

County of __Jefferson__

Subscribed and sworn to, before me, this 8 day of February, 2023.

_____
Notary Public Signature (Seal)

My Commission expires _____
My Commission Expires 01/07/2026

(Seal)

12